Joseph F. LAFAUCI, Plaintiff,

v.

ST. JOHN'S RIVERSIDE HOSPITAL (Park Care Pavilion), Pamela LaFrance, and 1199 National Benefit Fund (Union), Patrick Forde, and Maria Kercado Defendants.

No. 05 CIV.594 CM LMS.

United States District Court, S.D. New York.

Aug. 9, 2005.

Joseph F. LaFauci, Queens, NY, pro se.

Joseph Anthony Saccomano, Jr., Jack Schwartz & Associates, Allyson Leigh Belovin, Levy Ratner, P.C., New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING UNION DEFENDANTS' MOTION TO DISMISS COMPLAINT

MCMAHON, District Judge.

Plaintiff Joseph F. LaFauci sues St. John's Riverside Hospital (Park Care Pavilion); Pamela LaFrance, who is the Hospital's Vice President for Human Resources; an entity he identifies in the caption as "1199 National Benefit Fund (Union);" Patrick Forde, an organizer for the 1199 Service Employees International Union (SEIU) (hereinafter "1199" or "the Union"), and Maria Kercado, a Vice President of 1199. LaFauci, a member of 1199, was employed at St. John's for two years and four months. He was then fired—according to LaFauci, because he was disabled; according to the Hospital, because he was repeatedly insubordinate.

Defendants "1199 National Benefit Fund (Union)," Patrick Forde, and Maria Kercado have moved to dismiss the complaint as against them. That motion is granted.

**Background**

Mr. LaFauci began working for St. John's as a Counselor in the Hospital's inpatient Alcohol and Substance Abuse program on July 16, 2001. (Complaint ("Cplt."), at 3.) On November 14, 2003, LaFauci was terminated. (Cplt., at 19.)

As a result of his termination by St. John's, LaFauci lost his health coverage. LaFauci is distressed about the loss of his health benefits because he has been extremely ill for well over a decade. LaFauci is co-infected with HIV and Hepatitis C and has cirrhosis of the liver. (Cplt., at 11.) In an April 2004 letter, Dr. David Rubin wrote that LaFauci was also suffering from depression and a wasting syndrome, which "contribut[ed] to his poor functional status." (Cplt., at 14.) LaFauci is currently on the waiting list for a liver transplant at New York–Presbyterian Hospital. (Cplt., at 4, 11.)

LaFauci objected to his termination and filed a grievance. Hospital administrative staff, LaFauci, and a representative of 1199, held a grievance meeting on January 14, 2004. (Cplt., at 18.) The Union recommended that St. John's rescind LaFauci's termination and allow him to resign instead. The Union also requested compensation for Mr. LaFauci from the date of termination to the date of his grievance hearing. (Cplt., at 19.)

On January 16, 2004, Pamela LaFrance mailed LaFauci a response to the grievance meeting and indicated that LaFauci's termination would stand. (*Id.*) She also forwarded a copy of her response to Patrick Forde of Local 1199 Union. (Cplt., at 18, 20.) LaFrance's response indicated:

> Mr. LaFauci was terminated for inappropriate behavior/insubordination Nov. 14, 2003, when over a two week period, October 22 to November 8, he repeatedly refused to comply with a new procedure for client pick-up, demonstrating and vocalizing anger. Mr. LaFauci had been repeatedly counseled on the necessity of following departmental procedures in the past. He had also been repeatedly counseled on the impropriety of yelling and cursing in the workplace. Mr. LaFauci further demonstrated his anger during the grievance hearing which was terminated when he threatened his Department Head, Clinical Supervisor and the Vice President for Human Resources.

(Cplt., at 19.)

LaFauci asked the 1199 Chapter Hearing and Appeals Board to arbitrate his claim, but the Board refused. He then appealed to the Hearings and Appeals Board of the Health Systems Division of 1199, which upheld the decision of the lower board. On May 27, 2004, Eustace Jarrett sent a letter to LaFauci indicating that the Board had reviewed the documents he provided and "concluded that there is virtually no likelihood of succeeding at arbitration." (LaFauci Exh. B, at 10.)

**The Instant Complaint**

Mr. LaFauci is a *pro se* plaintiff, asserting a number of claims against five defendants. I must, therefore, construe the allegations in his pleading liberally. In trying to make sense of his claims, I have taken into account both LaFauci's written complaint and statements about his claims that he made at the Rule 16 conference held before this Court on May 6, 2005.

LaFauci alleges that the Hospital Defendants (St. John's and LaFrance) violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Family Medical Leave Act of 1993, by ending his employment and by failing to accommodate his disability. LaFauci also placed a checkmark next to the word "retaliation" on his form complaint, but he fails to specify a factual basis for such a claim. The Hospital Defendants have denied these allegations.

As against the persons I will call the Union Defendants, La Fauci asserts two claims. First, he maintains that the entity he calls "1199 National Benefit Fund (Union)" was "grossly negligent" in not main-

taining his health coverage, because it failed to offer him COBRA benefits after his employment was terminated and failed to pay his health premiums, which he could not afford. Second, he claims that the Union and its named officers breached their duty of fair representation ("DFR") by failing to take his case to arbitration.

At the outset, I note that there is a problem with the identification of one of the Union Defendants. Plaintiff purports to sue an entity called "1199 National Benefit Fund (Union)." But 1199 SEIU (the Union) and The 1199 National Benefit Fund (Fund) are two entirely different entities. The Fund is the Union's non-profit welfare trust fund, but it is a separate organization from the Union. Thus, there really is no "1199 National Benefit Fund (Union)."

At the Rule 16 conference, I was advised that plaintiff has served process on the Union and has not effected service on the National Benefit Fund. It is, therefore, the Union that is moving to dismiss, since the Fund is not yet a party to this action.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When the plaintiff is pro se, a court must be extremely liberal in its construction of the complaint. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

In considering a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996); *Wolff v. Rare Medium, Inc.*, 210 F.Supp.2d 490, 494 (S.D.N.Y. 2002).

**LaFauci Has No Claim Against The Union for Failing to Offer Him COBRA Benefits or for "Gross Negligence" in Not Maintaining LaFauci's Health Benefits.**

Under the Consolidated Omnibus Budget Reconciliation Act (COBRA), when an employee is laid off, his employer is obligated to notify the health care plan administrator of the termination. 29 U.S.C. § 1166(a)(2) (West 1999). The health care plan administrator is, in turn, required to notify the qualified beneficiaries of their right under COBRA to elect continuation coverage. COBRA coverage lasts for a maximum of 18 months. The employee must pay for the coverage himself. *Local 217, Hotel & Restaurant Employees Union v. MHM*, 976 F.2d 805, 809 (2d Cir. 1992).

In his complaint, LaFauci alleges that "the COBRA benefit was not offered to me by the 1199 Union." (Cplt., at 4.) Under COBRA, however, it is the duty of the health care plan administrator—in this

case, the aforementioned named-but-not-served National Benefit Fund—not the Union, to offer terminated employees the option to continue their coverage. Plaintiff has not served the National Benefit Fund, against which he could assert this claim; but as against the party he has served, the Union, he states no claim. LaFauci's complaint against the Union for failing to undertake a duty of the National Benefit Fund must be dismissed. This is, of course, without prejudice to any claim of this nature that he may assert against the Fund—should he ever serve the Fund.

LaFauci also claims that he couldn't afford the COBRA coverage, and contends that the Union was somehow "grossly negligent" in not ensuring that he kept health benefits. (Transcript of Pretrial Conference, at 18:10–20.) No law requires the employer, the plan, or the union to pay for COBRA coverage when employees cannot afford the premium. This claim is dismissed as against the Union and the individual Union Defendants to the extent it is asserted against them. If plaintiff attempts to assert such a claim against the Fund, it will be dismissed.

**Plaintiff's Claim that 1199 Breached its Duty of Fair Representation is Dismissed As Against the Union and the Individual Union Defendants.**

■ In an action for fair representation, the six-month statute of limitations under section 10(b) of the National Labor Relations Act governs the claim against the union. *King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir.1986) (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–71, 103 S.Ct. 2281, 76 L.Ed.2d 476); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp.2d 552, 562 (S.D.N.Y.2005).[1] The rule in the Second

Circuit is that "a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.'" *King, supra,* 785 F.2d at 33 (quoting *Santos v. District Council,* 619 F.2d 963, 968–69 (2d Cir.1980)). This claim lies against the Union itself, not the Fund, so the proper defendant has been served with process.

■ On May 27, 2004, Eustace Jarrett, Executive Vice President of 1199, sent LaFauci a letter indicating that the Hearings and Appeals Board of the Health Systems Division had considered his appeal and decided not to arbitrate his claim with St. John's. (LaFauci Exh. B, at 10.) LaFauci received this letter on or before May 31, 2004. (*Id.*) Ms. Jarrett indicated that the Board had decided to uphold the decision of the Chapter Hearing and Appeals Board because, "After reviewing all information presented by you [LaFauci], it is concluded that there is virtually no likelihood of succeeding at arbitration." (*Id.*) Jarrett wrote that the Union's decision not to pursue LaFauci's claim was final. (*Id.*)

Assuming receipt of the letter on May 31, 2004, the six-month statute of limitations for DFR claims ran on November 30, 2004. When a pro se plaintiff brings an action in the Second Circuit, the date of filing is the date the Court's Pro Se Office receives the plaintiff's complaint. *See Toliver v. County of Sullivan,* 841 F.2d 41, 42 (2d Cir.1988). The Pro Se office received LaFauci's complaint on December 2, 2004. Thus, LaFauci's DFR claim against the Union is time-barred and must be dismissed.

■ LaFauci's allegations against Forde and Kercado are similar to those he advances against the Union. LaFauci gen-

---

1. 29 U.S.C. § 160(b) states: "Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made..."

erally states that Forde and Kercado failed to apprise LaFauci of the laws that were violated by his firing, and that the two Union employees did not take sufficient action to contest his termination. (LaFauci Opposing Facts, at 2.) LaFauci claims that Forde "made no mention of the F.M.L.A. and the Disability act" (LaFauci Exh. D, at 15) and did not arrange for someone other than Pamela LaFrance to oversee LaFauci's grievance hearing after LaFauci told Forde that uncomfortable feelings and hostility existed between LaFrance and LaFauci. (LaFauci May 9 Fax, at 28.) LaFauci further complained that Forde "only said two or three words in my defense" at LaFauci's termination hearing. (LaFauci July 29 Fax, at 4.) LaFauci claimed he believed that the management and the Union "were working hand in hand in having me removed from my position at work." (*Id.*) Finally, LaFauci asserts that a number of faxes and other communications he sent to Maria Kercado went unanswered. (*Id.*)

LaFauci appears to be asserting a DFR claim against Forde and Kercado like that he asserted against the Union. Obviously, such a claim, were it legally viable, would be just as time-barred against them as it is against the Union. But no such claim lies as a matter of law. The Supreme Court has held that, " 'Union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Morris v. Local 819, Int'l Bhd. of Teamsters,* 169 F.3d 782, 784 (2d Cir.1999) (citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247–49, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), *overruled in part on other grounds by Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 241, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)). In *Morris,* the Second Circuit explained that "29 U.S.C. § 185(b) and the caselaw pro-

vide a shield of immunity for individual union members in suits for breach of the duty of fair representation." *Supra,* 169 F.3d at 784. As union agents, Forde and Kercado are immune from LaFauci's DFR claim against the Union. Thus, LaFauci fails to state a claim against Forde and Kercado, and his complaint against them must be dismissed.

### Conclusion

This constitutes the decision and order of the Court. A scheduling order relating to the claims against the Hospital Defendants is attached.*

* [Editor's Note: Scheduling order omitted for publication purposes.]