James AIKMAN, Plaintiff,

v.

The COUNTY OF WESTCHESTER, Westchester County Police Department, P.O. Edward Devlin, P.O. Kenneth Hasko, Det. Mark Carey, P.O. "John Doe, No. 4" (defendant "John Doe, No. 4" identified further as a police officer involved in the stop, search, custodial detention and arrest of the plaintiff on December 1, 2003 in Eastchester, New York), Sgt. "John" Luciano, "P.O. John Doe, No. 6," "P.O. John Doe, No. 7," "P.O. John Doe, No. 8," (defendants Luciano and "John Doe, No. 6" through "John Doe, No. 8" identified further as police officers employed by the defendant County and police department who were involved in surveillance activities in the vicinity of 955 Yonkers Avenue, Yonkers, New York, on or about December 7, 2003), Defendants.

No. 04 Civ. 7543(SCR).

United States District Court, S.D. New York.

June 3, 2007.

ing deprivations of his constitutional rights. This opinion addresses Defendants' motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

## I. Background

On December 1, 2003, while Plaintiff was driving in Yonkers, New York, Police Defendants stopped Plaintiff's car. Plaintiff was driving with a broken side-view mirror in violation of New York State law.[1] Police Defendants subsequently held Plaintiff at the scene while they searched his car. Plaintiff alleges that Police Defendants conducted surveillance on him before the traffic stop, used the broken mirror as a pretext to pull him over, and stopped him because he is African–American. (Am. Compl.¶ 28.) Plaintiff further alleges that Police Defendants, *inter alia*, held him against his will, assaulted, humiliated, and selectively enforced the laws against him. (Am.Compl.¶ 44.) Plaintiff contends that Westchester engages in a pattern, policy, or practice of racial profiling, selective enforcement, and unreasonable searches and seizures. (Am.Compl.¶¶ 58, 62.)

## II. Analysis

### A. Well–Pleaded Complaint Rule

Under the Federal Rules of Civil Procedure, a complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo,* 861 F.2d 40, 41–42 (2d Cir.1988).

Joseph Lanni, Law Office of Joseph P. Lanni, P.C., Larchmont, NY, for Plaintiff.

Shannon Sarles Brady, White Plains, NY, Lara K. Eshkenazi, Nicole L. Gueron, U.S. Attorney's Office, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

In this action, James Aikman (the "Plaintiff") brings suit against the County of Westchester ("Westchester") and several members of the Westchester County Police Department ("Police Defendants"). This suit stems from an incident where Plaintiff, who is African–American, was pulled over for a traffic violation, detained, and searched. Plaintiff, who brings this action pursuant to 42 U.S.C. §§ 1983 and 1985(3), alleges six causes of action, claim-

---

1. Plaintiff was subsequently convicted of the moving violation.

## B. Standard of Review

In evaluating a motion to dismiss, a court "must view all allegations raised in the complaint in the light most favorable to the non-moving party ... and 'must accept as true all factual allegations in the complaint.'" *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). In doing so, a court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The court's consideration is limited to the factual allegations in plaintiffs' complaints, documents attached to the complaint as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991)).

A court must deny a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because the complaint must merely allege facts which confer a cognizable right of action, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *York v. Ass'n of the Bar,* 286 F.3d 122, 125 (2d Cir.2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "Dismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42.

The Second Circuit has stressed that " '[t]his standard is applied with particular strictness when the plaintiff complains of a civil rights violation,' " *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 270 (2d Cir.1996) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)), and it is clear that notice pleading is sufficient to allege such a § 1983 violation. *Leatherman,* 507 U.S. at 168, 113 S.Ct. 1160; *see also Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). Thus, "[a] claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of stale law deprived the claimant of a federal right." *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983).

## C. Defendant County of Westchester

Plaintiff has alleged that Westchester violated his Fourth and Fourteenth Amendment rights by subjecting him to an unreasonable search and seizure, and deprived him of equal protection under the Fourteenth Amendment through racial profiling and selective enforcement. For the reasons set forth below, Defendant Westchester's motion to dismiss is denied.

■ To make a claim under § 1983, a "plaintiff must [first] allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ A municipality "can be sued directly under § 1983 for monetary, declaratory,

or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiff's allegations against Westchester are contained in the fifth and sixth causes of action in the amended complaint, both brought pursuant to § 1983. The fifth cause of action alleges that the officers' conduct was "derived from an official policy, pattern, and/or practice of the County of Westchester ... to conduct traffic stops" that violated Plaintiff's right to be free of unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments. (Am.Compl.¶¶ 57–58.) The sixth cause of action alleges that the officers violated Plaintiff's Fourteenth Amendment rights to equal protection by selectively enforcing laws based on race. (Am.Compl.¶¶ 61–62.)

█ Plaintiff's allegations that Westchester has a pattern or practice of depriving certain people of their constitutional rights satisfies *Leatherman's* notice pleading requirement.

### D. Defendant Police Officers

Plaintiff's claims against Police Defendants are contained in the first through fourth causes of action. (Am.Compl.¶¶ 19–55.) The first and second causes of action are brought pursuant to § 1983 and allege that Police Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by, *inter alia,* subjecting him to an excessive and unreasonable search and seizure and excessive force. The third cause of action is brought pursuant to § 1985(3) and alleges an unreasonable search and seizure under the Fourth and Fourteenth Amendments. The fourth cause of action

is also brought pursuant to § 1985(3) and alleges Police Defendants deprived Plaintiff of his rights to equal protection.

As Plaintiff's amended complaint does not specify in which capacity Police Defendants are being sued, this Court will analyze the complaint as if it was made against the Police Defendants in both their individual and official capacities

### 1. Defendant Luciano's Deputization as a DEA Officer

First, we will consider if Defendant James Luciano, who was both a Westchester County police officer and deputized as an officer with the Federal Drug Enforcement Agency ("DEA") pursuant to 21 U.S.C. § 878, was properly served. To properly serve a federal government employee who was sued in his individual capacity, a plaintiff must serve both the employee and the government. Fed R. Civ. P. 4(i)(2)(B); *Armstrong v. Sears,* 33 F.3d 182, 183 (2d Cir.1994) (explaining that "service upon the United States is not required in actions against federal agents in their individual capacities"). Defendant Luciano argues that his status as a DEA deputy makes him an employee of the federal government and the claims against him must be dismissed because the government was never served.

Law enforcement officers deputized under § 878 are "federal employees" only if they fall under certain "narrow" exceptions detailed in 5 U.S.C. § 3374(c). *See Felix v. N.Y.C. Police Dep't,* 89 Civ. 2410, 1991 WL 251660, *1, 1991 U.S. Dist. LEXIS 16549 at *2 (S.D.N.Y. Nov. 15, 1991). The § 3374(c) exception relevant here provides that "a State or local government employee on detail to a Federal agency" is considered to be an agency employee "for the purpose of any ... Federal tort liability statute...." 5 U.S.C. § 3374(c). Thus, if a law enforcement officer deputized under § 878 is sued under a "Federal tort

liability statute," he is a "federal employee" for Federal Rule of Civil Procedure 4(i)(2)(B) purposes, and the government must also be served.

■ Plaintiff brought this action pursuant to 42 U.S.C. §§ 1983 and 1983(3). Defendant Luciano argues that these are Federal tort liability statutes as defined under § 3374(c) and, as a result, he is a "federal employee." Although the sections are part of the federal code, they provide causes of action against state, not federal, officers and entities. *See Dotson v. Griesa,* 398 F.3d 156, 162 (2d Cir.2005). Sections 1983 and 1985(3) are therefore not "Federal tort liability statutes" as that term is defined by § 3374(c). For the purposes of this lawsuit, then, Defendant Luciano was not a "federal employee" and he has been properly served.

Defendant Luciano also contends that he is not suable in his official capacity because "suits against officers of the United States acting in their official capacities are considered suits against the United States," *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994), and the United States, as a sovereign, is immune from lawsuits. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Since he is not a "federal employee" for the purposes of this suit, Defendant Luciano cannot claim sovereign immunity. As a result, Defendant Luciano's motion to dismiss the official capacity claims against him based on his status as a deputized DEA agent is denied. His remaining arguments based upon his status as a Police Defendant will be considered concurrently with the other Police Defendants.

### 2. Section 1983 Claims

#### a) Capacity in Which Defendant Police Officers Are Being Sued

Plaintiff's § 1983 claims against Defendant Police officers are contained in the first and second claims, and mimic the fifth and sixth causes of action, which were brought against Westchester. As noted above, this Court will consider Plaintiff's claims to have been brought against the Police Defendants in both their official and individual capacities.

#### (1) Official Capacity

"Suits against [municipal] officials sued in their official capacity ... should be treated as suits against the [municipality]." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The official capacity claims against the Police Defendants are thus treated the same as the equivalent claims against Defendant Westchester County. As Plaintiff's claims against Westchester survived Defendant's motion to dismiss the Defendants' motion to dismiss Plaintiff's § 1983 claims against the Police Defendants is likewise denied.

#### (2) Individual Capacity

Individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Melo,* 502 U.S. at 25, 112 S.Ct. 358. "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiff alleges Police Defendants unreasonably stopped him, violated his right to be free of unreasonable searches, engaged in an excessive use of force against him, and violated his rights to equal protection by selectively enforcing the law.

#### (a) Unwarranted Traffic Stop

■ This Court first considers whether Police Defendant's stop of Plaintiff s vehicle violated Plaintiff's Fourth Amendment

rights. The Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). If the police have probable cause to stop an automobile, their "[s]ubjective intentions play no role" in the analysis. *Id.* at 813, 116 S.Ct. 1769; *see also Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ("The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as circumstances, viewed objectively, justify that action.").

■ In this case, Plaintiff was driving with a broken side-view mirror in violation of New York State motor vehicle laws. Plaintiff was convicted of the moving violation.[2] Since the Police Defendants clearly had probable cause to believe Plaintiff violated New York traffic laws, their decision to stop him was reasonable. *Whren,* 517 U.S. at 810, 116 S.Ct. 1769. Police Defendants' subjective motivations are not relevant here; since Plaintiff violated New York State motor vehicle laws, the officers' actions, under the "circumstances, viewed objectively, justify that action." *Scott,* 436 U.S. at 138, 98 S.Ct. 1717. Thus, to the extent that Plaintiff's first claim alleges that his Fourth Amendment rights were violated by the unwarranted traffic stop, it is dismissed.

**(b) Unreasonable Search and Seizure**

Plaintiff claims he was subjected to an unreasonable search and seizure by Defen-

dant Police. While this Court has found that the traffic stop itself was constitutional, the issue of whether the ensuing search of the vehicle was reasonable and constitutional is a separate analysis. *See Knowles v. Iowa,* 525 U.S. 113, 117–118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (holding that if one is pulled over for a legitimate traffic stop and the officer has no reasonable reason to search, then a full search of the vehicle is unreasonable). The Supreme Court has held that officers may "exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York v. Class,* 475 U.S. 106, 115, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 108–111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). However, someone who has been stopped for a moving violation and is removed from his vehicle by a police officer may have a cause of action if the subsequent detention by the police "unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

■ The Supreme Court has "long held that the touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Further, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts

---

**2.** Police Defendants originally issued the ticket on December 1, 2003 charging Plaintiff with a violation of traffic laws for having a broken left side view mirror. That charge was dismissed on March 1, 2004 because there was an incorrect citation of the statuto-

ry provision. The ticket was then reissued on September 24, 2004 with the proper statutory provision. Despite Plaintiff's arguments to the contrary, this procedural history does not undermine the moving violation conviction.

which, taken together with rational inferences from those facts, justifiably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While an "individual's ... expectation of privacy in an automobile [is reduced], owing to its pervasive regulation," *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (citing *California v. Carney*, 471 U.S. 386, 391–92, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)), motorists nonetheless have a reasonable expectation of privacy in their cars and cannot be subject to searches for no particularized purpose. *See generally City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).

 Here, Plaintiff sets forth evidence that he was detained for an hour and a half while the police searched his car, even though he was ostensibly stopped for a cracked side mirror.[3] Whether police have violated a citizen's Fourth Amendment rights is determined by examining whether they "unreasonably infringe[d] interests protected by the Constitution." *Caballes*, 543 U.S. at 407, 125 S.Ct. 834. At this stage of the litigation, this Court cannot rule as a matter of law that Police Defendants did not violate Plaintiff's rights. *See, e.g., Knowles*, 525 U.S. at 117–118, 119 S.Ct. 484. Furthermore, it is impossible to "examin[e] the totality of the circumstances" without further discovery. *Robinette*, 519 U.S. at 39, 117 S.Ct. 417. This Court finds that Plaintiff's allegations set forth a prima facie claim that Defendants violated his rights by subjecting him to an unreasonable search and seizure.

### (c) Excessive Use of Force

 Plaintiff also brought an excessive use of force claim. Claims of excessive use of force are also analyzed under the Fourth Amendment's reasonableness standard. *Soldal v. Cook County*, 506 U.S. 56, 70, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *see also Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that an excessive force claim that arises in the context of an arrest or investigatory stop is properly characterized as invoking the protections of the Fourth Amendment).

Plaintiff alleges that Police Defendants assaulted him. Such a claim does not need to be pled with heightened particularity to survive a motion to dismiss. *See Leatherman*, 507 U.S. at 164, 113 S.Ct. 1160. At this stage of the litigation, this Court cannot find that the force Police Defendants used was "reasonable." *Soldal*, 506 U.S. at 70, 113 S.Ct. 538. This Court finds that Plaintiff's allegations set forth a prima facie claim that Defendants violated his rights by subjecting him to an excessive use of force.

### (d) Equal Protection

 Plaintiff's second clause of action alleges that Defendants deprived him of his rights to equal protection. To prove this claim, a plaintiff must show "that the government's discriminatory selection of him [was] ... based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights," *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974), and "that similarly situated individuals of a

---

**3.** Westchester and Police Defendants attached a transcript of Plaintiff's hearing before the state judge who found him guilty of the traffic violation. That court noted that Plaintiff had been detained for an hour and a half. Both Plaintiff and Defendants requested this Court to consider this transcript can be considered in this motion to dismiss. *See, e.g., LaFauci v. St. John's Riverside Hosp.*, 381 F.Supp.2d 329, 332 (S.D.N.Y.2005); *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir.2000).

different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir.2000). While the Second Circuit held that "[m]erely 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation,'" *Berrios*, 501 F.2d at 1211 (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)), it recently "clarified" that "a plaintiff who ... alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner ... is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir.2001).

 Here, Plaintiff has alleged that his rights were infringed and he was harmed because of his race. He has alleged that a "facially neutral law"—the New York Vehicle and Traffic Code—"has been applied in an intentionally discriminatory race-based manner." *Pyke*, 258 F.3d at 110. At this stage, this is all he is obligated to do. *Id.*[4] Plaintiff's second cause of action against Police Defendants in their individual capacities states a claim.

### 3. Section 1985(3) Claims

 Plaintiff's third and fourth causes of action are conspiratorial § 1985(3) claims. A plaintiff seeking to recover under § 1985(3):

> must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 829–30, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). A claim of a conspiracy to violate civil rights requires a detailed fact pleading to withstand a motion to dismiss. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981). Further, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient ..." to defeat a motion to dismiss. *Dwares v. New York*, 985 F.2d 94, 100 (2d Cir.1993) (internal quotations and citations omitted).

Here, Plaintiff merely repeatedly alleges that Defendants conspired to target their conduct at Plaintiff because of his race. Plaintiff has therefore failed to allege fact;; sufficient to survive a motion to dismiss. Thus, Plaintiff's third and fourth causes of action are dismissed.[5]

---

4. While *Armstrong* provided a more stringent standard for Defendants in criminal cases to meet in order to be entitled to discovery, the facts alleged here—that, *inter alia*, the Police Defendants chose to stop Plaintiff based on his race, and that the subsequent search of his car and issuance of the summons was racially motivated—provide a different setting for an equal protection analysis than the facts in *Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480. In *Armstrong*, the discretion was prosecutorial, and the discovery sought implicated sepa-

ration of powers issues. *Id.* That is simply not the case before this Court, and we are confident that the distinction noted by the Second Circuit in *Pyke* is applicable here. *Pyke*, 258 F.3d at 109.

5. Because Plaintiff has failed to properly allege a cause of action under § 1985(3), this Court need not consider analyze the claims against Police Defendants in their individual and official capacities.

### 4. Qualified Immunity

This Court now considers Police Defendants' claims of qualified immunity.

■ To evaluate a claim of qualified immunity, a Court must first determine if the plaintiff has alleged that the government official violated his constitutional rights. If the facts a plaintiff alleges do not show the official's conduct violated a constitutional right, the inquiry ends. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Hope v. Pelzer*, 536 U.S. 730, 760, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). If, however, a plaintiff successfully alleges a constitutional violation, the court must then determine if the "constitutional right was clearly established at the time of the constitutional violation." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir.2003). The court focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. This is purely a legal question as it turns upon whether established law put the officer on notice that his conduct was clearly unlawful. *Id.; Stephenson v. Doe*, 332 F.3d 68, 80–81 (2d Cir.2003) ("We have said that the ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's action is a 'question of law better left for the court to decide.' ") (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.1990)).

■ Finally, as "reasonable mistakes can be made as to the legal constraints on particular police conduct" without stripping qualified immunity, *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151, "all but the plainly incompetent or those who knowingly violate the law" are protected from suit. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). However, if an officer's belief in the lawfulness of the actions was not objectively reasonable, "qualified immunity offers him no solace and the plaintiff's claims must be allowed to proceed." *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir.2002) (citing *Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727).

This Court thus considers if Police Defendants may avail themselves of the qualified immunity defense for their first and second causes of action.

#### a) Unreasonable Searches and Excessive Force

Plaintiff's complaint sets forth a violation of his constitutional right to be free of unreasonable searches and excessive force. Thus, this Court must consider if the constitutional right was clearly established at the time of the incident, *see Cowan*, 352 F.3d at 761, and "whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

First, Plaintiff has claimed that Police Defendants subjected him to an unreasonable search. "It is well established that a warrantless search is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *McCardle v. Haddad*, 131 F.3d 43, 48 (2d Cir.1997). "If it is established that the place or object subjected to the warrantless search is one in which the plaintiff has a reasonable expectation of privacy, the defendant has the burden of showing that the search was valid because it fell within one of the exceptions. . . ." *Id.* While an individual's expectation of privacy in his automobile is reduced, *see, e.g., Labron*, 518 U.S. at 940, 116 S.Ct. 2485, motorists nevertheless cannot be subject to unreasonable searches. *See generally Edmond*, 531 U.S. 32, 121 S.Ct. 447.

Plaintiff has pled that the search of his car was unreasonable. While "[a] limited search for weapons, without a warrant and without probable cause, is also permissible in connection with a lawful custodial interrogation," *McCardle v. Haddad,* 131 F.3d 43, 48 (2d Cir.1997) (citing *Terry,* 392 U.S. at 21, 88 S.Ct. 1868), a search of a detainee's vehicle is unreasonable if the search "went far beyond the [plaintiff's] person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Chimel v. California,* 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The scope of the search here is unclear. It is well-established that a search is unreasonable if it "went far beyond the [plaintiff's] person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Chimel,* 395 U.S. at 768, 89 S.Ct. 2034. Discovery is necessary to assess the reasonableness of the search, as the one and one-half search and detention alleged by Plaintiff certainly could have been unreasonable. Defendants' motion to dismiss the unreasonable search and seizure component of the first cause of action on the basis of qualified immunity is denied.

Second, Plaintiff alleges that Police Defendants used excessive force during the traffic stop. The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151. Again, Plaintiff is not required to plead with heightened particularity; instead, he must only "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.

2000) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

Plaintiff has alleged that Police Defendants subjected him to excessive force and therefore violated his Fourth Amendment rights. Taking Plaintiff's allegations as true, *see Asplundh Tree,* 102 F.3d at 662, it is clearly established that the force Plaintiff alleges Defendants used against him would violate Plaintiff's Fourth Amendment rights. Therefore, the motion to dismiss this portion of the claim for reasons of qualified immunity is denied.

**b) Equal Protection**

Plaintiff alleges that Police Defendants selectively enforced the New York Vehicle and Traffic laws because he was African American. Plaintiff's allegations, if proven to be true, set forth a constitutional violation, as explained above. If, as Plaintiff alleges, Police Defendants stopped him for no other reason than that he was African American, the unconstitutionality of applying such criteria to determine against whom the laws should be enforced is clearly established. Without further discovery, it is impossible to why, exactly, Police Defendants decided to stop Plaintiff. Thus, this Court finds that Police Defendants are not entitled to qualified immunity at this stage of the litigation and denies Police Defendant's motion to dismiss Plaintiff's second claim. *Accord Taylor v. City of New York,* No. 03–6477, 2006 WL 1699606, \*7 (S.D.N.Y. June 21, 2006); *Feliciano v. County of Suffolk,* 419 F.Supp.2d 302, 313–314 (E.D.N.Y.2005).

**E. Punitive Damages**

Defendants request that this Court dismiss Plaintiff's claims for punitive damages against the individual officers because punitive damages are only available if the

defendant had an "evil motive or intent" or was callously indifferent. *Ivani Contr. Corp. v. City of New York,* 103 F.3d 257, 262 (2d Cir.1997). At this stage of the litigation, this Court cannot say that the Police Defendants were not motivated by an "evil motive or intent" or callously indifferent. *Id.* Police Defendants' motion to dismiss Plaintiff's claims for punitive damages is therefore denied.

## III. Conclusion

Defendants' motion to dismiss Plaintiff's third and fourth causes of action against Defendant Police Officers is GRANTED. Defendants' motion to dismiss the first and second causes of action as to Defendant Police Officers is DENIED, and their motion to dismiss Plaintiff's fifth and sixth causes of action against Defendant Westchester is also DENIED.

The Clerk of the Court is directed to terminate docket numbers 5, 14, and 18.

IT IS SO ORDERED.