Joseph H. PYKE, individually and as personal representative of the Estate of Matthew Pyke; May P. Cole; Charles Benedict; Patricia A. Benedict; Julius M. Cook; Beverly J. Pyke; Edward Smoke; Selena M. Smoke; Margaret Pyke Thompson, on behalf of themselves and all other persons similarly situated, Plaintiffs–Appellants,

v.

Mario CUOMO; Thomas A. Constantine; Robert B. Leu; Ronald R. Brooks, Defendants–Appellees.

Docket No. 00–9399.

United States Court of Appeals, Second Circuit.

Argued June 8, 2001.

Decided July 20, 2001.

Jeffrey S. Shelly (George F. Carpinello, on the brief), Boies, Schiller & Flexner, LLP, Albany, N.Y., for plaintiffs-appellants.

Assistant Solicitor General Andrew D. Bing (Solicitor General Preeta D. Bansal, Deputy Solicitor General Daniel Smirlock, Senior Counsel Peter H. Schiff, on the brief), for Eliot Spitzer, Attorney General of the State of New York, Albany, N.Y., for defendants-appellees.

Before LEVAL, Circuit Judge, and TRAGER, District Judge.*

LEVAL, Circuit Judge:

Plaintiffs appeal from an order of the United States District Court for the Northern District of New York (Neal P. McCurn, Senior District Judge), granting summary judgment to the defendants, who are (or were) officials of the State of New York, on plaintiffs' claims that defendants deprived them of equal protection of the laws by refusing to provide them with police protection because they are Native Americans.

Plaintiffs contend that, on the Mohawk Indian reservation known as the Akwesasne or St. Regis Reservation, during the 1980s disputes about gambling led to widespread criminal activity by an organization known as the Warrior Society, which acted as a private security force for illegal casino operations. In 1990, the Warrior Society's criminal activity on the reservation culminated in violent attacks, attempted murder, extortion, and arson directed against plaintiffs and other anti-gambling demonstrators. The complaint alleges that defendants discriminatorily declined to provide plaintiffs with police protection on the reservation because the persons in need of protection were Native Americans. The defendants' position is that they did not send the New York State police to intervene in the events occurring on the reservation because the Indian tribe exercises a considerable measure of self-governance on the reservation, and because the violence on the reservation threatened the safety of the state police officers.

The district court granted summary judgment to the defendants, explaining that (1) the plaintiffs did not show that defendants had treated a similarly situated group differently, despite having the opportunity to take discovery on the issue, and (2) the plaintiffs did not plead an express racial classification. On the district court's view, in order to establish a denial of equal protection in such circumstances, the plaintiffs were required to plead and show either disparate treatment of similarly situated individuals, or an express racial classification. We believe this was error; we therefore vacate the judgment of the district court.

██ A plaintiff alleging an equal protection claim under a theory of discriminatory application of the law, or under a theory of discriminatory motivation underlying a facially neutral policy or statute,

* The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation. The Honorable Joseph M. McLaughlin recused himself from consideration of the case after oral argument.

generally need not plead or show the disparate treatment of other similarly situated individuals. To be sure, as the Supreme Court explained in *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), a plaintiff alleging a claim of selective *prosecution* in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals who were not prosecuted; that is because courts grant special deference to the executive branch in the performance of the "core" executive function of deciding whether to prosecute. In the present case, however, plaintiffs do not make a claim of selective prosecution. The *Armstrong* rule has no application to their claim. So long as they allege and establish that the defendants discriminatorily refused to provide police protection because the plaintiffs are Native American, plaintiffs need not allege or establish the disparate treatment of otherwise similarly situated non-Native American individuals.

It would be difficult, if not impossible, to find other individuals whose situation is similar to Native Americans living on a reservation and exercising a substantial measure of self-government independent of New York State. Plaintiffs would probably be incapable of showing similarly situated individuals who were treated differently. If the rule were as framed by the district court, police authorities could lawfully ignore the need of Native Americans for police protection on the basis of discriminatory anti-Indian animus. This is clearly not the law.

The district court perhaps misunderstood the import of our discussion in *Brown v. Oneonta*, 221 F.3d 329 (2d Cir. 2000). In *Brown*, we explained that there are "several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." *Id.* at 337. We listed three:

> A plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Id.* at 337 (internal quotation marks and citations omitted). We added that the plaintiffs in *Brown* were seeking to establish the first theory—an express racial classification—because the police officers, having received a complaint identifying an assailant as black, were expressly directing their search toward black persons. We noted plaintiffs' argument in that case that the district court had erred "in requiring them to plead the existence of a similarly situated group of non-minority individuals that were treated differently." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)). We added that "it is sometimes necessary to plead the existence of a similarly situated group that was treated differently." *Id.* For example, if a plaintiff seeks to prove selective *prosecution* on the basis of race, he " 'must show that similarly situated individuals of a different race were not prosecuted.' " *Id.* (quoting *Armstrong*, 517 U.S. at 465, 116 S.Ct. 1480). We went on to clarify, however, that in contrast "it is not necessary to allege the existence of a similarly situated non-minority group when challenging a law or policy that contains an express, racial classification." *Id.*

The district court in the present case may have understood this last quoted comment from *Brown* as meaning that the requirement to show the existence of bet-

ter treated, similarly situated persons is obviated *only* "when challenging a law or policy that contains an express, racial classification." *Id.* We meant no such thing. In that discussion, we focused on the pleading requirement where a plaintiff is alleging "an express racial classification" because the plaintiffs in *Brown* were alleging that the police were acting under such a policy. We did not mean to imply that plaintiffs who rely on a "facially neutral law or policy that has been applied in a discriminatory manner," or "a facially neutral statute or policy [that] has an adverse effect and that … was motivated by discriminatory animus," such as the Native American plaintiffs here, need to show a better treated, similarly situated group of a different race.

■ We now clarify—a plaintiff who, as in *Brown,* alleges an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection.

As we explained in *Brown,* a plaintiff seeking to establish a violation of equal protection by intentional discrimination may proceed in "several ways," including by pointing to a law that expressly classifies on the basis of race, a facially neutral law or policy that has been applied in an unlawfully discriminatory manner, or a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus. The present complaint sufficiently alleged each of the last two theories, as it charged the discriminatory withholding of police protection because the plaintiffs were Native American. It is unnecessary for the plaintiffs to allege or show either an express racial classification embedded in a statute or policy, or the existence of better treated, similarly situated persons of a different race.

Plaintiffs will, of course, be required to substantiate their claim that the denial of police protection was motivated by racial discrimination. As yet, they have proffered no such evidence. The grant of summary judgment for the defendants may not, however, be justified on that ground. The district court stayed plaintiffs' discovery, except on certain specified issues. By reason of the stay, plaintiffs have not had the opportunity to take discovery on the existence of discriminatory motivation.

Upon granting summary judgment for the defendants on plaintiffs' federal constitutional claims, the district court dismissed plaintiffs' pendent state law claims without prejudice to their reassertion in state court. Because the grant of summary judgment on the federal claims is vacated, the dismissal of the pendent claims is vacated as well.

## CONCLUSION

The judgment of the district court is hereby vacated, the case is remanded for further proceedings.