*Nordwind v. Rowland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2008

Docket Nos. 07-4862-cv (L), 07-5084-cv (XAP)<sup>*</sup>

(Argued:  May 14, 2009                    Decided: October 16, 2009)

---

THEKLA NORDWIND and GRETA HOERMAN,

> *Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees*,

GERALD B. TAYLOR, as executor of the Estate of Michael Franke,

> *Plaintiff-Third-Party-Defendant-Counter-Claimant-Counter-Defendant-Appellant-Cross-Appellee*,

PETER FRANKE-RUTA,

> *Counter-Claimant-Third-Party-Defendant-Appellant-Cross-Appellee*,

> - v.-

DAVID J. ROWLAND and ROWLAND & ASSOCIATES,

> *Defendants-Third-Party-Plaintiffs-Counter-Defendant-Counter-Claimants-Appellees-Cross-Appellants*,

ROWLAND & PETROFF,

> *Defendant-Counter-Claimant-Third-Party-Plaintiff-Appellee-Cross-Appellant*,

MRS. GRETE HOERMANN,

> *Third-Party-Defendant-Counter-Claimant-Appellee-Cross-Appellant*,

CLIFFORD CHANCE PARTNERSCHAFTGESELLSCHAFT, COMMISSION FOR ART RECOVERY, INC., WILLY NORDWIND, JR., REED, STOVER & O'CONNOR, P.C. and SQUIRE, SANDERS & DEMPSEY L.L.P.,

---

<sup>*</sup> 07-5084-cv (XAP) has been withdrawn by the so-ordered stipulation filed 8/11/08.

*Third-Party-Defendants*.

_____

Before: MINER and WESLEY, <u>Circuit Judges</u>, and STANCEU, <u>Judge</u>.[**]

     Appeal from a summary judgment entered on October 16, 2007, in the United States District Court for the Southern District of New York (Pogue, <u>J.</u>, sitting by designation), in favor of defendants-appellees, dismissing, <u>inter alia</u>, plaintiffs-appellants' claims against their former counsel for legal malpractice, the court having concluded that the plaintiffs failed to show actual injury because, under German law, they would have only been entitled to 50% of the subject inheritance regardless of any malpractice on the part of their counsel.

     Affirmed.

ELLEN R. WERTHER and Bruce J. Ressler, Ressler & Ressler, New York, New York, <u>for plaintiffs-counter-defendants-appellants-cross-appellees, plaintiff-third-party-defendant-counter-claimant-counter-defendant-appellant-cross-appellee, and counter-claimant-third-party-defendant-appellant-cross-appellee</u>.

ANDREW N. KRINSKY and Debra Bodian Bernstein, Tarter Krinsky & Drogin LLP, New York, New York, <u>for defendant-third-party-plaintiff-counter-defendant-counter-claimant-appellees-cross-appellants, defendant-counter-claimant-third-party-plaintiff-appellee-cross-appellant</u>.

MINER, <u>Circuit Judge</u>:

     Thekla Nordwind and Greta Hoerman, plaintiffs-counter-defendants-appellants-cross-appellees, Gerald B. Taylor as executor of the Estate of Michael Franke, plaintiff-third-party-defendant-counter-claimant-counter-defendant-appellant-cross-appellee, and Peter Franke-Ruta, counter-claimant-third-party-defendant-appellant-cross-appellee, (collectively the "plaintiffs" or the "Nordwind Parties"), appeal from a summary judgment entered on October 16, 2007, in the United States District Court for the Southern District of New York (Pogue, <u>J.</u>, sitting by designation), in favor of the plaintiffs' former counsel David J. Rowland ("Rowland") and Rowland & Associates, defendants-third-party-plaintiffs-counter-defendants-counter-claimants-

_____

[**] The Honorable Timothy C. Stanceu, Judge, United States Court of International Trade, sitting by designation.

appellees-cross-appellants, and Rowland & Petroff, defendant-counter-claimant-third-party-plaintiff-appellee-cross-appellant (collectively, the "defendants"). As relevant to this appeal, the District Court dismissed (1) the Nordwind Parties' claims against the defendants for breach of fiduciary duty, breach of contract, and negligence, as duplicative of the plaintiffs' claim against the defendants for legal malpractice; and (2) the Nordwind Parties' legal malpractice claim against the defendants because, pursuant to German law, the Nordwind Parties would have only been entitled to 50% of the subject inheritance regardless of Rowland's alleged malpractice; and denied (3) the Nordwind Parties' claim of unjust enrichment and request to disqualify Rowland from further representation of clients whose interests in the subject inheritance are adverse to the Nordwind Parties' interests. For the reasons that follow, we affirm the judgment of the District Court.

I.      BACKGROUND

A.      The Kirstein Assets

Clara and Gustav Kirstein lived in Leipzig, Germany with their two daughters, Gabrielle and Marianna, in the 1930s. They were "a close Jewish family of means." Gustav, who was a renowned art publisher and art collector, died in 1934, leaving a life estate in all of his assets to his wife Clara and the remainder to Marianna and Gabrielle in equal shares.

Before his death, Gustav had experienced the beginnings of Nazi persecution when his business was subjected to a forced sale. Faced with the continuing rise of Nazi power, Clara sent her two daughters to the United States after Gustav's death. Clara, intending to emigrate to the United States after her daughters, remained in Germany to "sell whatever she could of her remaining artwork and business" and to "ship the balance of her artwork and other personal property to . . . New York, where she planned to join [her family]." On June 29, 1939, however, the Nazis confiscated Clara's passport and denied her permission to leave Germany. That night, Clara returned to her home in Leipzig and committed suicide. Thereafter, the Nazis confiscated her assets (the "Kirstein Assets"), which included "the artwork and other property that had been

3

packed for shipment to . . . the United States."

Nearly fifty years later, in 1986, Marianna died in New York State, leaving her son Klaus Baer as the sole heir of her estate. Klaus Baer died in 1987 in the State of Illinois, leaving his residuary estate in a trust benefitting his wife Miriam Reitz Baer ("Miriam Baer"), who survives him, for her lifetime with the remainder to the Oriental Institute of the University of Chicago (the "Oriental Institute").

The other Kirstein daughter, Gabrielle, died in New York State in 1957. She left her estate to her husband, Erich Jacobsen. Erich Jacobsen died in New York State in 1977, and the bulk of his estate passed to his and Gabrielle's son, Godfrey Jacobsen, who was named the residual beneficiary in Erich Jacobsen's will. Godfrey Jacobsen died in New York State in 1980, leaving a substantial amount of his property to Christel Gauger ("Gauger"), a nurse who had been with the Jacobsens for over twenty-seven years. Gauger, who had cared for Godfrey Jacobsen since the time he was fourteen-years old, was named the residual beneficiary of Godfrey Jacobsen's estate. After Godfrey Jacobsen's death, Gauger returned to her home in Germany and resided there until her death, which occurred during the pendency of this appeal.[1]

B.      The Nordwind Parties Seek Restitution

In 1990, Germany enacted the German Property Restitution Law (the "German Property Act"), which provided a limited time for certain persons to assert claims of restitution arising from the illegal confiscation of properties by the Nazi government. See Vermögensgesetz [VermG] [Settlement of Pending Property Claims], Sept. 29, 1990, Bundesgesetzblatt, Teil I [BGB*l*.I] (F.R.G) (translated). Under the German Property Act, claimants had until December 31, 1992, for real estate claims, and June 30, 1993, for movable property claims, to file for restitution. Qualifying persons, namely, the original owners of the confiscated property or their heirs, who failed to file a claim for restitution by the deadline forfeited their rights. The

---

[1] Although not pertinent to this appeal, Gauger purportedly named her nephew, Dr. Michael Gauger, as her sole heir.

4

Conference on Jewish Material Claims Against Germany, Inc. (the "JCC"), succeeded to any unclaimed rights to the confiscated properties. The JCC, in turn, created the "Goodwill Fund" to permit Jewish owners or their heirs who missed the December 31, 1992 and June 30, 1993 filing deadlines under the German Property Act to file claims with the JCC to receive a portion of their restitution claims. The deadline for filing a claim under the Goodwill Fund, as relevant to the events giving rise to this appeal, was December 31, 1998.

In September of 1998, the Nordwind Parties, who are nieces and nephews of Clara Kirstein, became aware of the possibility that they may be entitled to recover restitution for the Kirstein Assets. After conducting research on the Internet, the Nordwind Parties retained defendant Rowland on October 1, 1998, to "file a claim . . . to the Kirstein Assets and to maximize [their] recovery on the claim to the extent possible." Thekla Nordwind provided Rowland with "an exhaustive family tree," "numerous documents from Clara Kirstein, including an exhaustive listing of the Kirstein Assets confiscated from her, her last will and testament, and that of her husband Gustav," and the last will and testament of Klaus Baer, among other documents. In light of the impending December 31, 1998 deadline to file a claim with the JCC Goodwill Fund for restitution, Rowland advised the Nordwind Parties that "all of the heirs or possible heirs, including nieces and nephews of Clar[a] Kirstein, should file a claim with the JCC by the end of this year to preserve all possible rights."[2]

In November 1998, Rowland identified Miriam Baer as a potential heir to the Kirstein Assets. Although Miriam Baer did not wish to file a claim to the Kirstein Assets for her own benefit, Rowland advised her to do so and she retained him by a letter dated November 27, 1998, to represent her in the restitution claim. Thereafter, based on the information furnished to him by Thekla Nordwind, Rowland obtained a copy of Godfrey Jacobsen's will and identified another potential heir to the Kirstein Assets as Christel Gauger. Rowland then contacted Gauger,

---

[2] Rowland suggested to Thekla Nordwind that each of the Nordwind Parties and "other possible Kirstein heirs" hire him, so that he would "be assured of representing heirs." Accordingly, each individual plaintiff retained Rowland by letter agreement.

5

informed her of her potential interest in the Kirstein Assets, and offered to represent her in their retrieval. Gauger retained Rowland by a letter agreement dated December 16, 1998.

At no point did Rowland inform the Nordwind Parties of any potential conflicts of interests arising from his representation of persons who might hold interests adverse to the Nordwind Parties. Rowland did inform the Nordwind Parties, however, that "[b]oth Miriam Reitz [Baer] . . . and Christel Gauger have indicated that they may wish to assign their rights to Clar[a] Kirstein's nieces and nephews[, i.e., the Nordwind Parties,] at some time in the future." Rowland had also informed the Nordwind Parties that "only heirs are eligible to file claims under the [German Property Act], a prerequisite status to the assertion of a claim to the JCC Goodwill Fund." Although it is disputed whether Rowland received oral consent from the Nordwind Parties to contact Gauger and offer his services, it is undisputed that Rowland never obtained a written waiver from them to do so.

On December 22, 1998, Rowland filed a restitution claim with the JCC Goodwill Fund on behalf of only Miriam Baer and Gauger as heirs to the Kirstein Assets. The following year, on December 3, 1999, Miriam Baer and the Oriental Institute assigned their interests in the Kirstein Assets to the Nordwind Parties. Gauger, however, refused to assign her interests in the Kirstein Assets to the Nordwind Parties.

In connection with the restitution claims filed with the JCC Goodwill Fund, Rowland also filed applications for Erbscheins (a German certificate of inheritance) to establish, inter alios, Gauger's entitlement to the Kirstein Assets. Although there is a mechanism to contest the issuance of Erbscheins, Rowland did not inform the Nordwind Parties of their right to contest Gauger's Erbschein application. On January 21, 2000, the German Surrogate Court issued three Erbscheins relevant to Gauger's claim to the Kirstein Assets. The German Surrogate Court issued: (1) an Erbschein naming Erich Jacobsen and Godfrey Jacobsen as the heirs of Gabrielle Jacobsen; (2) an Erbschein naming Godfrey Jacobsen as the heir of Erich Jacobsen; and (3) an

6

Erbschein naming Gauger as the heir of Godfrey Jacobsen.[3] These Erbscheins were then submitted to the JCC Goodwill Fund in support of Gauger's restitution claim to the Kirstein Assets.

While the JCC claim remained pending, Thekla Nordwind, acting pro se and representing the Nordwind Parties, filed a separate claim in the Claims Resolution Tribunal (the "CRT") in 2001.[4] The claim was for Swiss bank account assets that had been confiscated from Clara Kirstein during the Nazi era. With respect to this claim, the District Court described the disputed underlying events:

> [Rowland] claim[s] that Ms. Gauger had consented to Mrs. Nordwind filing at the CRT, but had not consented to be joined (or to participate at all), and had not agreed to assign her interest from any recovery to the Nordwind Parties. The Nordwind Parties contend that Ms. Gauger had agreed to assign her interest to them, and had agreed to sign over her power of attorney to Mrs. Nordwind, but that when Mr. Rowland, at the request of Mrs. Nordwind, contacted Ms. Gauger, the situation ended with Mr. Rowland representing Ms. Gauger [before the CRT].

Nordwind v. Rowland, No. 04-9725, 2007 WL 2962350, at *3 (S.D.N.Y. Oct. 10, 2007).

In February 2003, the JCC Goodwill Fund rendered an award of restitution for the Kirstein Assets, apparently in the millions of dollars, to Miriam Baer and Gauger in equal shares. Although the Nordwind Parties would ultimately receive Miriam Baer's share of the restitution

---

[3] While the appeal was pending, the German Surrogate's Court revoked the Erbschein naming Erich Jacobsen and Godfrey Jacobsen as Gabrielle's heirs because it was discovered that Gabrielle had not died intestate but left a will leaving her entire estate to Erich. The Nordwind Parties contend that the Erbschein naming Gauger as Godfrey's heir therefore has been revoked. The German Surrogate's Court, however, never has revoked Gauger's Erbschein. Nor has it revoked Godfrey's Erbschein. Indeed, it makes no difference whether Gabrielle left her entire estate to Erich by will or whether both Erich and Godfrey inherited Gabrielle's estate through intestate succession because Erich leaves his estate to Godfrey in any event. Thus, the revocation of Gabrielle's Erbschein does not affect the chain of inheritance of the Kirstein Assets from Erich to Godfrey and, ultimately, to Gauger.

[4] In late 1996 and early 1997, several class action lawsuits were filed in the United States District Court for the Eastern District of New York against certain Swiss banks for their involvement in concealing the assets of Holocaust victims. In August 1998, the parties reached an agreement to settle the lawsuits for $1.25 billion. The CRT, which was created as part of a plan of distribution for $800 million of the settlement amount, reviews claims by Holocaust victims (or their heirs) who had deposited money in Swiss banks prior to or during the Second World War. See generally In re Holocaust Victim Assets Litig., 413 F.3d 183 (2d Cir. 2005); In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139 (E.D.N.Y. 2000).

award pursuant to the earlier executed December 3, 1999 assignment, the Nordwind Parties were excluded from the restitution award because the JCC Goodwill Fund did not recognize any assignment of rights. Following the restitution award, the JCC Goodwill Fund informed the Nordwind Parties that they "were bound by the claim to the Kirstein Assets filed by Mr. Rowland and were precluded from filing a new claim, in their own right, to the Kirstein Assets under the applicable rules of the [JCC]." In December 2003, the Nordwind Parties terminated Rowland as their representative.

In January 2004, the CRT awarded the Nordwind Parties $130,000 in connection with their claim to Swiss bank account assets that were confiscated from Clara Kirstein by the Nazis. After Rowland submitted Gauger's Erbschein to the CRT and notified the CRT of Gauger's right to 50% of the Kirstein Assets, however, the CRT reduced the Nordwind Parties' award by half to $65,000. Similarly, after certain artworks which were part of the Kirstein Assets were recovered and subsequently sold at an auction, the proceeds of the sale were distributed to the Nordwind Parties and Gauger in equal shares. As a result of these awards and recovery of assets, and in accord with his retainer agreements, Rowland received a 20% contingent fee from Gauger and, as well, a 20% contingent fee from the Nordwind Parties in all actions in which Rowland had represented them.

C.     District Court Proceedings

On December 10, 2004, the Nordwind Parties filed a complaint in the District Court alleging various claims against the defendants related to Rowland's representation of the Nordwind Parties. The complaint, as later amended, included causes of action for negligence, legal malpractice, breach of fiduciary trust, breach of contract, and unjust enrichment. As a remedy, the complaint demanded compensatory and punitive damages in the amount of approximately $25 million, disgorgement of all fees paid in connection with the case, disqualification of defendants from representing Gauger, and an injunction against the defendants from representing Gauger in the future with respect to her interest in the Kirstein Assets.

8

Following discovery, the parties filed cross-motions for summary judgment.

In a decision dated October 10, 2007, the District Court granted the defendants' motion for summary judgment and dismissed the Nordwind Parties' complaint. Nordwind, 2007 WL 2962350, at *11. After confirming diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), the District Court concluded that (1) the Nordwind Parties' claims of breach of fiduciary duty, breach of contract, and negligence were duplicative of their claim for legal malpractice; (2) the Nordwind Parties' claim for legal malpractice did not involve an actual injury because they would have received 50% of the Kirstein Assets under the applicable German laws, regardless of whether Gauger was represented by Rowland or not; and (3) the Nordwind Parties' unjust enrichment claim was without merit in light of the court's dismissal of the underlying legal malpractice claim. Id. at *4–*9. The District Court also denied the Nordwind Parties' request to disqualify Rowland. An amended judgment was entered on October 16, 2007, and a timely notice of appeal was filed on November 1, 2007.

On December 27, 2007, the parties stipulated to withdraw the appeal because "some claims remain unadjudicated . . . and no [Fed. R. Civ. P.] 54(b) certification has been granted." On May 7, 2008, the District Court issued a memorandum and order stating that the October 16, 2007 judgment was final under 28 U.S.C. § 1291 because all claims by then had been finally resolved. The appeal was thereafter reinstated on May 28, 2008.

On appeal, the Nordwind Parties argue principally that the District Court erred (1) in holding that, as a matter of German law, the Nordwind Parties were entitled only to 50% of the Kirstein Assets; (2) in dismissing the Nordwind Parties' claim of breach of fiduciary duty on the finding that it was duplicative of their claim for legal malpractice; and (3) in dismissing all of the Nordwind Parties' claims based on the finding that the Nordwind Parties could not, as a matter of law, demonstrate that they would have prevailed on their legal malpractice claim. The Nordwind Parties also contend that the District Court abused its discretion in denying their request to disqualify Rowland from further representing Gauger in relation to any claim to the Kirstein

9

Assets.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment de novo, "examining the facts in the light most favorable to the non-moving party and resolving all factual ambiguities in that party's favor." Pyke v. Cuomo, 567 F.3d 74, 76 (2d Cir. 2009). We will affirm the judgment "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.; see also Fed. R. Civ. P. 56(c). To the extent the District Court's decision involves an interpretation of foreign law, our review is de novo. See Fin. One Public Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 340 (2d Cir. 2005); see also Fed. R. Civ. P. 44.1 ("The [district] court's determination [of foreign law] must be treated as a ruling on a question of law.").

We review the District Court's grant or denial of restitution, as the equitable remedy of unjust enrichment, for abuse of discretion. See LiButti v. United States, 178 F.3d 114, 121 (2d Cir. 1999). See generally Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448 F.3d 573, 586–87 (2d Cir. 2006). The District Court's determination of whether to disqualify an attorney is also reviewed for abuse of discretion. See, e.g., Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1385, 1387 (2d Cir. 1976); accord Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 750 (2d Cir. 1981).

### B.    Legal Malpractice

"In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies." Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008). To prevail on a claim for legal malpractice under New York law, a plaintiff must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006). We limit our discussion to the dispositive element of actual damages, which was determined by the District Court to be lacking

10

in this case as a matter of law.  See Nordwind, 2007 WL 2962350, at \*9; see also Achtman, 464 F.3d at 337.

According to the District Court, the German Property Act operates to grant the Nordwind Parties and Gauger rights to the Kirstein Assets in equal shares.  Relying upon this initial understanding of German law, the District Court reasoned that because Gauger had always been entitled to 50% of the Kirstein Assets, whatever malpractice that attended Rowland's dual representation of the Nordwind Parties and Gauger had no effect, i.e., caused no actual injury, on the Nordwind Parties' right to the other 50% of the Kirstein Assets.  We agree with the District Court's interpretation of German law and, accordingly, the court's reasons for finding that the Nordwind Parties suffered no actual injury in this case.

The German Property Act grants restitution rights to owners or their "legal successors" for property illegally confiscated by the Nazi government.  See Vermögensgesetz [VermG] [Settlement of Pending Property Claims], Sept. 29, 1990, Bundesgesetzblatt, Teil I [BGB*l*.I] 205, § 2(1) (F.R.G) (translated).  The right to restitution under the German Property Act vests directly in the property owner on September 29, 1990 — the date of the enactment of the German Property Act.  In the event the owner has died prior to September 29, 1990, the restitution right directly vests in the owner's "legal successors."  7 Beck's Brief Commentaries, Palandt Bürgerliches Gesetzbuch § 1922 (65th rev. ed. 2006) ("If the party originally affected [by the illegal confiscation] is no longer alive on the key date, i.e., September 29, 1990, his legal successor shall be the rightful claimant within the meaning of the [German Property Act]." (translated)).  This is because the illegal confiscation measures, which the German Property Act addresses, were effective in rem, and, therefore, "in cases of death [of the owner of the confiscated property] before the enactment of the property law, the confiscated asset was neither part of the estate under testate nor intestate succession."  Bundesverwaltungsgericht [BVerwG] [Federal Administrative Court] Sept. 7, 1998, BVerwG 1999 VIZ, 215, 217, 8 B 118.98 (Berlin) (the "English Will Case").

11

With respect to the determination of "legal successor," German law generally provides that "legal succession by inheritance is governed by the law of the state of which the testator has been a national at the time of his death." 7 Beck's Brief Commentaries, Palandt Bürgerliches Gesetzbuch EG 25 (65th rev. ed. 2006) (translated). In the context of the German Property Act, however, German law dictates the determination of "legal successor" without the usual deference to local succession laws. See English Will Case, BVerwG 8 B 118.98 ("[T]he concept of legal succession under [the German Property Act] cannot be contingent on the question to whom the pertinent law of succession allocates the confiscated asset or the restitution claim . . . . [the determination of 'legal successor' is] removed from the realm of law of succession."). Because the purpose of the German Property Act is to compensate "for the illegal situation created by the expropriation and to the extent possible restore the status quo ante," the term "legal successor" has been defined specifically as those persons who ultimately would have inherited the property had it not been illegally confiscated. Id. ("[A]ccording to the meaning and purpose of § 2 [of the German Property Act,] the person of the legal successor has to be determined without regard to the confiscation measure subject to the compensation."). To this end, German law refers to the "universal heir" or its equivalent, see Bürgerliches Gesetzbuch [BGB] [Civil Code], § 1922(1) (defining "[u]niversal succession" as the passing of the decedent's assets "as a whole to one or several other persons"), as the "legal successor" who would have hypothetically inherited the illegally confiscated property, see, e.g. English Will Case, BVerwG 8 B 118.98. Since the beneficiaries named in the residuary clause of a New York will inherit everything in the estate that is not subject to a specific bequest, these beneficiaries are regarded as the "universal heirs" for purposes of German law. Cf. id.

The German Civil Code adds an additional layer of analysis to the definition of "legal successor" by specifying that "[o]nly a person who is living at the time of the accrual of the

12

inheritance may become an heir."[5]  The German Civil Code § 1923(1), at 349 (Simon L. Goren, trans., Fred B. Rothman & Co. 1994).  This provision is consistent with the German Property Act, which, as explained above, (1) requires that the restitution rights vest directly in the property owner if he or she were not deceased prior to the enactment of the German Property Act, or (2) requires that the restitution rights vest directly in the property owner's legal successors if the property owner had been deceased prior to the enactment of the German Property Act.  See Bundesverwaltungsgericht [BVerwG] [Federal Administrative Court] Aug. 29, 1996, BVerwG 1996 VIZ, 710–711, 7 C 43/95 (VG Leipzig) (the "Farmer Case").  Implied in this formula is that "legal successors" must be alive at the time the restitution rights vest.  Because the German Property Act requires the identification of those in whom the restitution rights will initially vest, the requirement that the "legal successor" be alive is a reasonable one that is consistent with the German Civil Code.  Indeed, although the Nordwind Parties misread section 1923(1) of the German Civil Code, see supra note 5, they do not contest its applicability to the German Property Act.  See, e.g., Expert Opinion of Dr. Stephen Scherer, submitted by the Nordwind Parties (relying on section 1923(1) of the German Civil Code).

In sum, then, "legal successors" under the German Property Act are those (1) who were alive at the time of enactment of the German Property Act on September 29, 1990, and (2) who hypothetically would have inherited the illegally confiscated property by virtue of having inherited all assets which were not specifically bequeathed from the relevant estate(s). Accord Farmer Case, BVerwG 1996 7 C 43/95 ("The 'legal succession' concept as cited in the [German Property Act] addresses events of succession that have arisen until the [German Property Act] came into force on September 29, 1990 . . . . The law thus allows for the circumstance that the asset, had it not been confiscated from the injured party . . . would have been transferred to the

---

[5]  The Nordwind Parties contend that section 1923(1) of the German Civil Code actually means that "[o]nly persons living at the time of the decedent's death may become heirs."  The plain text of the German Civil Code provides, however, that it is "at the time of the accrual of the inheritance" — and not at the time of the property owner's death — that determines the relevant heirs.  See id. (emphasis added).

intestate or testate heir." (emphasis added)).

Applying this framework, we conclude that the District Court properly identified Gauger as the putative 50% owner of the Kirstein Assets. Gauger, who was alive as of September 29, 1990, would have inherited 50% of the Kirstein Assets from Godfrey Jacobsen, who died in 1980 and named Gauger as the residual beneficiary of his estate. Godfrey Jacobsen would have inherited 50% of the Kirstein Assets from his father, Erich Jacobsen, who died in 1977 and named Godfrey Jacobsen as the residual beneficiary of his estate. Erich Jacobsen would have inherited 50% of the Kirstein Assets from his wife, Gabrielle, who died in 1957 and left her entire estate to Erich Jacobsen. Gabrielle, in turn, would have inherited 50% of the Kirstein Assets from her mother, Clara Kirstein, who died in 1939 and left the Kirstein Assets to Gabrielle and Marianna in equal shares.

Similarly, we conclude that the District Court properly identified the Nordwind Parties as the putative owner of the remaining 50% of the Kirstein Assets. The Nordwind Parties were assigned 50% of the Kirstein Assets from Miriam Baer and the Oriental Institute. Miriam Baer, who was alive as of September 29, 1990, would have inherited 50% of the Kirstein Assets from Klaus Baer, who died in 1987 and left his entire estate to his wife Miriam Baer for her lifetime with the remainder to the Oriental Institute. Klaus Baer would have inherited 50% of the Kirstein Assets from his mother Marianna, who died in 1986 and left her entire estate to Klaus Baer. Marianna, in turn, would have inherited 50% of the Kirstein Assets from her mother, Clara Kirstein, who died in 1939 and left the Kirstein Assets to Gabrielle and Marianna in equal shares.

We note that the arguments made by the Nordwind Parties are refuted by our interpretation of German law. For instance, the Nordwind Parties' contentions that Clara Kirstein's so-called "direct" heirs, i.e., her daughters Marianna and Gabrielle, are the legal successors of Clara Kirstein under the German Property Act and that the restitution rights directly vested in Marianna's and Gabrielle's respective estates on September 29, 1990, is contrary to German law that limits heirs to living persons at the time of the accrual of the inheritance.

14

Because the confiscation of Kirstein Assets had in rem effect, Clara Kirstein could not bequeath — and her daughters could not inherit — the restitution rights to the confiscated property until September 29, 1990, when those rights were created by the German Property Act. By the time the German Property Act was enacted, of course, Marianna and Gabrielle had long since passed away.

The Nordwind Parties also argue that Gauger could not have inherited the Kirstein Assets under New York law because "property not owned by the testator at the time of his death is not subject to disposition by will." Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F. Supp. 2d 309, 315 (S.D.N.Y. 2007). Relying upon this New York rule, the Nordwind Parties assert that Gauger could not have inherited Gabrielle's 50% interest in the Kirstein Assets by will because such interest did not exist until September 29, 1990, after all persons preceding Gauger's chain of inheritance had already died. This reliance on New York law is misplaced, however, as New York law — although it may supplement the finding of "legal successor" insofar as New York wills are involved — does not affect the analysis in identifying the "legal successor" under German law. Indeed, the Nordwind Parties' assertion that local succession laws determine the identity of the "legal successor" is inconsistent with the German Administrative Court's decision in the English Will Case. In the English Will Case, the decedent died in England fifteen years prior to the enactment of the German Property Act. Although English law, like New York law, did not permit a decedent to bequeath property that did not exist at the time of his death, the German Administrative Court held that the testamentary heir — and not the intestate heir — was the "legal successor" to the restitution rights pursuant to the German Property Act. See English Will Case, BVerwG 8 B 118.98. Thus, whether Gauger would in fact have inherited the property under New York State's law of intestate succession is irrelevant in determining the identity of the "legal successor" under the German Property Act.

Accordingly, because Gauger and the Nordwind Parties are both entitled to 50% of the restitution rights to the Kirstein Assets, we hold that the Nordwind Parties are unable to establish,

15

as a matter of law, that they suffered any injury when they and Gauger each received 50% of the Kirstein Assets through Rowland's dual representation.

C.      Breach of Fiduciary Duty

The Nordwind Parties also argue that the District Court erred in dismissing their breach of fiduciary duty claim as duplicative of their legal malpractice claim. We disagree because we conclude, as did the District Court, that the breach of fiduciary duty claim that plaintiffs combined in the first cause of action with their legal malpractice claim must be dismissed as duplicative of the malpractice claim.

Under New York law, where a claim for breach of fiduciary duty is "premised on the same facts and seeking the identical relief" as a claim for legal malpractice, the claim for fiduciary duty "is redundant and should be dismissed." Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (App. Div. 2004). However, if the remedy sought by the plaintiffs "is a restitutionary one to prevent the fiduciary's unjust enrichment," the "less stringent 'substantial factor' standard" would apply to the causation element of the claim for breach of fiduciary duty. See LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J., 173 F.3d 454, 465 (2d Cir. 1999) (Sotomayor, J.); see also, e.g., RSL Commc'ns PLC v. Bildirici, — F. Supp. 2d —, 2009 WL 2524614, at 23 n.15 (S.D.N.Y. 2009). Otherwise, "where damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability." LNC Invs., Inc., 173 F.3d at 465; cf. Achtman, 464 F.3d at 337 (requiring proximate-causation standard to establish legal malpractice claim).

Here, combined in their first cause of action, the Nordwind Parties do not dispute that their claims for legal malpractice and breach of fiduciary duty seek identical relief for damages. Instead, the Nordwind Parties initially argue that their legal malpractice and breach of fiduciary duty claims are not redundant because those claims are premised on different facts. They assert that their legal malpractice claim is based on Rowland's rendering erroneous legal advice to them

16

— i.e., that the Nordwind Parties and Gauger were both entitled to 50% of the Kirstein Assets —
before his meeting with Gauger.  By contrast, they assert that their claim of breach of fiduciary
duty is based on Rowland's dual representation of adverse interests — i.e., those alleged
competing interests held by the Nordwind Parties and Gauger — an event that occurred after
Rowland's meeting with Gauger.  We find these distinctions to be trivial.  The Nordwind Parties'
legal malpractice and breach of fiduciary duty claims are factually inseparable in this case.

To establish an actionable claim for legal malpractice, the Nordwind Parties argue that (1)
Rowland erroneously interpreted the law and committed malpractice by advising the Nordwind
Parties that Gauger was entitled to 50% of the Kirstein Assets; (2) Rowland acted on his
erroneous interpretation of the law by representing Gauger; and (3) Rowland's representation of
Gauger caused actual injury, i.e., the Nordwind Parties were identified as only 50% — rather
than 100% — putative owners of the Kirstein Assets.  To establish an actionable claim for breach
of fiduciary duty, the Nordwind Parties argue that (1) Rowland's representation of Gauger (2)
caused Rowland to be less faithful in protecting (3) the Nordwind Parties' rights to the entirety of
the Kirstein Assets.  Presumed in the breach of fiduciary duty claim is that Rowland's
understanding of the law — that the Nordwind Parties and Gauger each held non-competing
interests to 50% of the Kirstein Assets — was erroneous; otherwise, there would be no viable
breach of fiduciary duty claim in this case had Rowland not represented adverse interests and
failed in his obligation of "undivided loyalty."  See, e.g., Fashion Boutique of Short Hills, Inc.,
780 N.Y.S.2d at 594–96.

It is evident that the Nordwind Parties' malpractice and breach of fiduciary duty claims
arise from the same three successive factual events: (1) Rowland's communication of legal
advice regarding the identity of heirs to the Kirstein Assets; (2) Rowland's dual representation of
the Nordwind Parties and Gauger; and (3) the distribution of awards to the Nordwind Parties and
Gauger in equal shares. The Nordwind Parties' temporal distinctions merely amount to
identifying one of these factual events as different from another.  Their argument fails because all

17

three of these factual events are at the core of both the malpractice and breach of fiduciary duty claims.

The Nordwind Parties next argue that their legal malpractice and breach of fiduciary duty claims are not redundant because different standards of causation apply to the two claims. Although the Nordwind Parties' erroneously argue that a legal malpractice and breach of fiduciary duty claim can never be redundant, they are correct in recognizing that New York law applies the lower "substantial factor" standard of causation to a breach of fiduciary duty claim for which the remedy of restitution is sought. The District Court, in rejecting plaintiffs' argument, reasoned that New York law does not differentiate between the causation standards for legal malpractice and breach of fiduciary duty in the context of attorney liability. Although the reasoning by which the District Court rejected plaintiffs' argument was incorrect, see LNC Invs., 173 F.3d at 465, we, too, reject that argument. The Nordwind Parties sought damages, and not restitution, as a remedy for the breach of fiduciary duty claim they stated as part of their first cause of action. Therefore, the District Court did not err in dismissing that claim for redundancy. The Nordwind Parties also brought, as part of their second cause of action, an "unjust enrichment" claim that is, in some respects, duplicative of the breach of fiduciary duty claim that they brought as part of their first cause of action. However, for this unjust enrichment claim the Nordwind Parties sought a restitutionary remedy rather than damages. The District Court did not dismiss the Nordwind Parties' unjust enrichment claim as redundant but instead denied relief after considering the claim on the merits. See infra Part II(D) ("Unjust Enrichment").

D.    Unjust Enrichment

The Nordwind Parties challenge the District Court's denial of their claim for unjust enrichment, for which they also seek the remedy of restitution. Specifically, the Nordwind Parties argue that all compensation paid to Rowland during his period of disloyalty to them "must [be] disgorge[d] . . ., irrespective of proof of damages." Having concluded as a matter of law that the Nordwind Parties received the entire amount of their share of the Kirstein Assets to

18

which they were entitled, i.e., 50%, we necessarily conclude that the breach of fiduciary duty claim that the Nordwind Parties included within their unjust enrichment claim fails because they were unable to show that they were injured by any alleged breach of fiduciary duty. Further, we hold that the District Court did not abuse its discretion in denying relief on the remainder of the Nordwind Parties' unjust enrichment claim.

Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr., 448 F.3d at 586 (internal quotation marks omitted). The main thrust of the Nordwind Parties' argument is that equity compels an award of restitution because Rowland used information he received from representing the Nordwind Parties to advocate the interests of a party who holds competing interests. The Nordwind Parties' argument, however, cannot stand because it relies upon the false premise that Gauger held "competing interests" with the Nordwind Parties regarding the Kirstein Assets. As explained above, the Nordwind Parties are entitled to 50% of the Kirstein Assets — no more and no less. We conclude the District Court did not err in deciding, for purposes of ruling on the Nordwind Parties unjust enrichment claim, that Rowland's use of information to recover Gauger's 50% interest in the Kirstein Assets could not have come at the Nordwind Parties' expense. Neither equity nor good conscience would require restitution where, as here, the plaintiffs did not hold a competing interest in Gauger's 50% share of the Kirstein Assets and secured exactly what they were legally entitled to receive.

E.      Disqualification

Finally, the Nordwind Parties challenge the District Court's denial of their request to disqualify Rowland "from continuing to represent Gauger's competing interest in the unrecovered portion of the [Kirstein] Assets." The Nordwind Parties argue that Rowland had become privy to privileged information in the course of his representation of them and that the privileged information is directly relevant to the interests implicated in Rowland's representation

19

of Gauger. In light of our holding on the legal question of Gauger's entitlement to 50% of the Kirstein Assets, we conclude that the District Court did not abuse its discretion in having decided against disqualifying Rowland from further representation.

In determining whether to disqualify an attorney from representing a client, a court necessarily balances the client's right to select counsel of his choice against the need to maintain the integrity and high standards of the legal profession. See Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981). To this end, "our decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules," although not every violation of a disciplinary rule will require disqualification. Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). In the context of successive representation, where disqualification is asserted by a former client to prohibit an attorney from representing another client, we have stated that disqualification may be warranted if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Id. at 133.

With respect to whether Rowland had access to, or was likely to have access to, relevant privileged information, the Nordwind Parties fail to make any argument on this point. They merely assert in conclusory fashion that "Rowland had direct access to relevant, privileged information" without identifying any error with the District Court's findings that the relevant information "has become generally known" and that the "allegedly 'confidential' information did not relate to the Nordwind Parties but to Ms. Gauger." Nordwind, 2007 WL 2962350, at *9. More importantly, however, the Nordwind Parties fail to demonstrate that Rowland's representation of Gauger was adverse to the Nordwind Parties' interests. Because Gauger was

20

entitled to 50% of the Kirstein Assets, any representation on behalf of her rightful portion of the Kirstein Assets is not adverse to the Nordwind Parties' interests in the <u>other</u> 50% of the Kirstein Assets. That is, the Nordwind Parties' right to 50% of the Kirstein Assets and Gauger's right to 50% of the Kirstein Assets represent separate stakes that can wholly co-exist without undermining any part of each other. <u>See</u> <u>Smith v. City of N.Y.</u>, 611 F. Supp. 1080, 1088 (S.D.N.Y. 1985) ("Ethical problems arise only when differing interests adversely affect counsel's judgment or dilute his loyalty.").

Accordingly, we conclude that the District Court did not abuse its discretion in denying the Nordwind Parties' request to have Rowland disqualified from continuing to represent Gauger in proceedings relating to the Kirstein Assets.

## III.     CONCLUSION

For the foregoing reasons, the judgment of the District Court is AFFIRMED. The pending motion to enjoin Rowland from directly or indirectly assisting Gauger's estate or her heirs is DISMISSED as moot.

21